UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:12-CV-00414-JHM

MEDTRONIC, INC.;
MEDTRONIC SOFAMOR DANKEK USA, INC.                    PLAINTIFF

v.

RALPH ROYER and
MELODY ROYER                                          DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on a motion by Plaintiffs Medtronic, Inc. and Medtronic Sofamor Dankeke USA, Inc. for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202; and injunctive relief  [DN 18].  Pursuant to court order, also before the Court are briefs regarding the Court's exercise of jurisdiction [DN 35, 36].  Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

In February of 2007, Dr. Clark Bernard performed a three level corpectomy on Ralph Royer. The surgery required the removal of multiple disks, and the installation of a Medtronic manufactured device called a VerteStack.  Another Medtronic manufactured product, Infuse, was also used during the surgery as a bone growth stimulator.  Following the surgery, it was discovered that the VerteStack was not properly installed or had come apart, requiring additional surgery and rehabilitation.  Ralph Royer filed an action against Dr. Bernard and Medtronic due to the complications with the VerteStack.  The claim against Medtronic was settled by a confidential release and settlement agreement on May 3, 2010 (the "Release").

Meanwhile, Royer's condition, again, began to deteriorate, and a boney overgrowth was discovered.  Due to the boney overgrowth, Ralph Royer has undergone several more surgeries, with

potential for more, and continues to endure pain and suffering.  The Royers allege that Infuse caused unusual boney growths as evidenced by an article published in *The Spine Journal*.  Additionally, the Royers have alleged that Infuse was approved by the FDA for single level lumbar surgeries, but never approved for use in cervical spine fusions, similar to the one that Ralph Royer underwent. With this knowledge, the Royers filed a cause of action in Jefferson Circuit Court on May 30, 2012 against Medtronic, and its sale representatives, Toby Wilcox and Tony Whitlow ("the Royer Action").  In the Royer Action Complaint, the Royers state that the release signed on May 3, 2010, "purports to release all claims known and unknown," however, "[t]he sole consideration for the Release . . . was alleged defect or defects in a medical device known as a VerteStatck . . . . At no time was there any consideration given for releasing the Medtronic Defendants from liability for the defects as described in Infuse."  (Royer Action Complaint, 3:12-cv-00367)

Medtronic, Inc., and Medtronic Sofamor Danek USA, Inc. (collectively "Medtronic") removed the Royer Action from Jefferson Circuit Court case to the Western District of Kentucky on July 2, 2012 claiming fraudulent joinder of Medtronic sales representatives, Wilcox and Whitlow. (Case No. 3:12-cv-00367).  They then filed this cause of action asking the Court to (1) declare that the May 3, 2010 Release bars any and all claims arising from Ralph Royer's surgeries that took place on February 5, 6, and 14, 2007 and March 3, 2008; (2) compel the Royers to dismiss the 2012 action with prejudice; and (3) indemnify Medtronic of the costs, attorneys' fees, and other expenses that they have incurred.  In a Memorandum Opinion Order dated January 23, 2013, this Court remanded the Royer Action (Royer v. Medtronic, case no. 3:12-cv-00367) back to Jefferson Circuit Court. Medtronic has filed a motion for judgment on the pleadings [DN 18] and on January 23, 2013, the Court ordered the parties to file simultaneous briefs on the issue of whether the Court

should exercise its discretion to accept jurisdiction over this action under the Declaratory Judgment Act. (Order, DN 34].)

## II. DISCUSSION

Even if a federal court does have jurisdiction over a cause of action asking for relief under the Declaratory Judgment Act, it may decline to exercise that jurisdiction.  See Adrian Energy Associates v. Michigan Public Service Com'n, 481 F.3d 414, 421 (6th Cir. 2007).  However, Medtronic reasons that because it also asks for injunctive relief and damages, claims which the Court must address, and the issues are closely intertwined with the declaratory relief claim, the Court should exercise its jurisdiction over all three claims.

### A. Declaratory Judgment

The Federal Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  Exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. Bituminous Casualty Corp. v. J & L Lumber Col, Inc. 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942)).  See also Travelers Indemnity Co. v. Bowling Green Professional Associates, et al., 495 F.3d 266 (6th Cir. 2007).  Therefore, the Court must decide whether it should exercise jurisdiction over this claim.  See Nationwide Mutual Fire Ins. Co. v. Willenbrink, 924 F.2d 104, 105 (6th Cir. 1991).  "In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised

on diversity jurisdiction in the face of a previously-filed state court action." <u>Adrian Energy</u>, 481 F.3d at 422.

It is necessary to examine five factors to determine whether a case is appropriate for a declaratory judgment. <u>Bituminous</u>, 373 F.3d at 813. In determining whether such exercise is appropriate, the Sixth Circuit instructs a district court to examine:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

<u>Id.</u> (citing <u>Scottsdale</u>, 211 F.3d at 968 (citations omitted)).

"It is well established that the Declaratory Judgment Act ... is not an independent source of federal jurisdiction." <u>Louisville and Nashville R. Co. v. Donovan</u>, 713 F.2d 1243, 1245 (6th Cir. 1983). "[B]efore invoking the Act, the court must have jurisdiction already." <u>Heydon v. MediaOne of Southeast Mich., Inc.</u>, 327 F.3d 466, 470 (6th Cir. 2003). As stated in a previous Order, this Court's subject matter jurisdiction rests upon complete diversity of citizenship and the requisite amount-in-controversy under 28 U.S.C. § 1332 as alleged in the Complaint. (Order, [DN 34].)

The first factor in determining whether it is appropriate to exercise jurisdiction is whether the judgment would settle the controversy. Medtronic is asking the Court to interpret the Release entered into by Medtronic and the Royers after Ralph Royer's spinal surgery. Medtronic states that a decision by the Court holding that the Release bars further claims against Medtronics would fully settle the controversy. As part of the relief sought by Medtronic in this action includes the Court compelling the Royers to dismiss the Royer Action with prejudice, Medtronic contends that the

declaration of the rights and duties under the Release favors the Court exercising jurisdiction.  The Royers argue that a sales representative defendant in the Royer Action is not a party in this action, and will remain part of the Royer Action regardless of this Court's decision.   The Court has remanded the Royer Action back to state court and if the Court were to grant the relief sought by Medtronic in this Declaratory Judgment Action, compelling the Royers to dismiss their state court claim, then the judgment would settle the controversy.  However, the Court has concerns regarding a federal injunction that would effectively dismiss a state court action[1].

The next factor the Court must address is whether the Declaratory Judgment Act would serve a useful purpose in clarifying the legal relations at issue.  A declaratory judgment action serves a useful purpose if it "clarifi[es][the] legal duties for the future, rather than the past harm...." AmSouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004). Thus, "a party with an ongoing contractual relationship who has been accused of breach can go to court and have the contract definitively interpreted, thus allowing it to conform its behavior to the law and stop the potential accrual of damages." Id. The Sixth Circuit has recognized that "'[t]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action.'" Id. at 787 (quoting Int'l Ass'n of Entrepreneurs v. Angoff, 58 F.3d 1266, 1270 (8th Cir. 1995)). The Sixth Circuit has also held that "[w]here a pending coercive action, filed by the natural

_____

[1] The Court questions its authority to grant a federal injunction which restrains the parties of a state court action.  See Atlantic Coast Line R. Co. V. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287 (1970) ("It is settled that [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties[.]"); Oklahoma Packing Co. V. Oklahoma Gas & Elec. Co., 309 U.S. 4, 9 (1940) (Finding that an injunction that "was a restraint of the parties and was not formally directed against the state court itself is immaterial" under a federal statute that provided that an injunction should not be granted by any federal court to stay proceedings in any state court.)

plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." Id. Therefore, when there is "some uncertainty beyond the possibility of litigation[,]" a declaratory judgment action is justified. See id. However, "where the injury is already complete[,]" the declaratory judgment action serves no useful purpose. Id. Here, this Declaratory Judgment Action brought by Medtronic would serve no useful purpose. The injury of the Royer's filing a lawsuit has already been completed, and it is currently being litigated in state court. The enforcement of the Release should be raised by Medtronic in the Royer Action as an affirmative defense, with a counterclaim for attorney's fees. Therefore, the Court finds that there is no uncertainty in the interpretation of the Release beyond the possibility of litigation in the Royer Action. This factor weighs in favor of not exercising jurisdiction.

The third factor in determining whether the Court should exercise jurisdiction is whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." Medtronic removed the Royer Action from Jefferson Circuit Court case to the Western District of Kentucky on July 2, 2012 claiming fraudulent joinder of Medtronic sales representatives, Wilcox and Whitlow. On July 13, 2012 they filed this Declaratory Judgment Action asking the Court to enforce the Release. The Sixth Circuit has recognized that the policy underlying the Declaratory Judgment Act is not supported "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit...." AmSouth, 386 F.3d at 788. The only purpose of such a suit is "to guarantee to the declaratory plaintiff her choice of forum-a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." Id. (citing Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712 (7th Cir.

2002)).  Medtronic asked the Court to enforce the Release in this action before even addressing the subject matter jurisdiction in the Royer Action.  (See Medtronic's Motion to Stay All Proceedings in this Action Pending the Court's Disposition, in Another Action Between the Same Parties, of Medtronic's Request for Declaratory Relief and for Specific Enforcement of the Parties' Prior Settlement, case no. 3:12-cv-00367 [DN 20].)  It seems clear that this action is 'procedural fencing' in an attempt to get federal review of parallel issues in the Royer Action which has been remanded back to state court.  Therefore, this factor weighs in favor of not exercising jurisdiction.

The fourth factor is whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.  As both parties state, the issues in this case arise out of the interpretation of the Release between the Royers and Medtronic.  Medtronic states that the only issue before the Court is the plain and unambiguous terms of the Release which is a legal question that can easily be resolved as a matter of law.  (Pl.'s Jurisdictional Brief, 9 [DN 36].)  According to Medtronic, no ambiguity in the Release exists and therefore there would be no new finding of Kentucky law.  The Royers argue there is the possibility of friction between federal and state courts because of the potential of contradictory decisions.  The Royer Action was filed first and the same issues involving the interpretation of the Release will need to be addressed in state court.  Furthermore, the Court finds that the state court is in a better position to address the interpretation of the Release as it is governed by state law, the state court actually has jurisdiction over the Royer Action, and the state court is in a better, more efficient, position to give Plaintiff the relief it is requesting.  The fourth factor favors the Court not exercising jurisdiction.

Lastly, the fifth factor asks whether there is an alternative remedy that is better or more effective.  Medtronic argues that there is no reason that pursuing this claim in Kentucky state court

would be any more efficient or convenient for the parties.  The Royers states that the proof required for a decision in this case is closely intertwined with the proof in the Royer Action.  As this case involves interpretation of contract law, and the identical issues will be decided in the Royer Action, the Royers reason the state court is the better alternative.  The Court finds that judicial resources would best be preserved by having this matter decided in one action. In this matter, the courts would likely be duplicating efforts if this Declaratory Judgment Action were allowed to proceed.  Kentucky provides a procedure for declaration of rights, and Medtronic could have presented this claim to the same state court that is deciding the underlying action, requesting the state court to dismiss the action.  Because this factor, and three other factors weigh in favor of dismissal, the Court finds this matter is best resolved by allowing Medtronic to raise its arguments either as a defense or counterclaim in the Royer Action.  Therefore, the Court will not exercise jurisdiction over the declaratory relief claim.

### B. Injunctive Relief and Damages

In addition to asking for declaratory judgment on the issue of the Release, Medtronic's Complaint also asks the Court to enjoin the Royers from pursuing the Royer Action, compel the Royers to dismiss any pending actions with prejudice, and award Medtronic attorneys' fees, costs and expenses in this action and the Royer Action.  Because Medtronic seeks relief in addition to a declaratory judgment, it argues that the Court must address the additional relief. (Pl.'s Jurisdictional Brief, 4 [DN 36] (citing Adrian, 481 F.3d at 422).)  Medtronic states that the claims for injunctive relief, indemnification and the declaratory relief are all closely intertwined as they all depend on whether the Release bars the Royer Action.  Since the claim for declaratory relief is closely intertwined with the claims the Court must address, Medtronic reasons that the Court should

exercise its jurisdiction over all claims.

The Royers agree that the only substantive issue is the interpretation of the release. However, they argue that the Court has discretion to stay this proceeding, citing to Adrian in which the Sixth Circuit affirmed the district court's judgment declining jurisdiction, but did so "based on the alternate ground of abstention." (Defs.' Response to Brief Filed Pursuant to Court's Order, 2 [DN 38] (citing Adrian, 481 F.3d at 416).)

Under the so-called Colorado River abstention doctrine, federal courts have a "narrow exception" to their "virtually unflagging obligation ... to exercise the jurisdiction given them" where there is (1) "parallel" litigation pending in state court, and (2) the proposed litigation in federal court would be duplicative or unwise. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817–18 (1976); Bates v. Van Buren Tp., 122 Fed. Appx. 803, 806 (6th Cir.2004); Gottfried v. Medical Planning Servs ., Inc., 142 F.3d 326, 329 (6th Cir.1998).

The threshold question in the Colorado River abstention analysis is whether there are parallel proceedings in state court. Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 31 (6th Cir.1984). To be "parallel[2]" the proceedings have to be "substantially similar." Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir.1998). This means that neither the issues nor the parties have to be identical. Heitmanis v. Austin, 899 F.2d 521, 528 (6th Cir.1990). If the Court determines the two

---

[2]"However, cases are not considered parallel if there is an issue that would not be resolved by the state court upon the completion of the state court action." Kopacz v. Hopkinsville Surface and Storm Water Utility, 714 F.Supp.2d 682, 686 (W.D.Ky.2010) (citing E.ON U.S. Services, Inc. v. QSC Painting, Inc., 2008 WL 3982499 (E.D.Ky. Aug. 26, 2008); PNC Bank, National Assoc. v. Person, 2007 WL 1423744 (W.D.Ky. May 8, 2007)). See also Wright v. Linebarger Googan Blair & Sampson, LLP, 782 F.Supp.2d 593, 603–604 (W.D.Tenn.2011).

concurrent actions in state and federal court are parallel, it must then weigh various factors[3] that "rest on considerations of wise judicial administration, [and give] regard to conservation of judicial resources and comprehensive disposition of litigation." Romine, 160 F.3d at 339 (quotations omitted).

As discussed in detail above, the Court finds that the exact same issue presented here, the interpretation of the Release and whether it bars the Royer Action, will have to be decided in the Royer Action itself.  The Royer Action was filed prior to this action, the governing law is Kentucky law, and the approach Medtronic suggests, requesting this Court to interpret the Release, will likely result in piecemeal litigation as the state court is most likely addressing the exact same issue. Furthermore, while Medtronic's requests for relief are directed at the parties of the state proceeding, the requests are essentially asking this Court to grant a federal injunction to dismiss proceedings in state court.  The relief Medtronic seeks would be most efficiently be resolved by the state court.  No evidence has been provided that suggests that Medtronic's rights will not be adequately protected in the state court action.  Therefore, the Court finds that the balance of the relevant Colorado River factors, including the reasoning for not exercising jurisdiction under the Declaratory Judgment Act, supports this Court staying this action in deference to the state court action.

---

[3]Factors the Court should weigh include: (1) whether state court has assumed jurisdiction over any res or property, (2) "the inconvenience of the federal forum," (3) "the desirability of avoiding piecemeal litigation," (4) "the order in which jurisdiction was obtained by the concurrent forums," Colorado River, 424 U.S. at 818 (internal quotations omitted), "(5) whether the source of governing law is state or federal: (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings" and (8) the presence or absence of concurrent jurisdiction." Romine, 160 F.3d at 340-41 (internal quotations omitted).

**IV. CONCLUSION**

For the reasons set forth above, the Court **DECLINES** to exercise jurisdiction over this declaratory judgment action.  Furthermore, the Court finds that it is prudent to abstain from considering the Plaintiffs' motion for judgment on the pleadings [DN 18].  **IT IS HEREBY ORDERED** that the motion by Plaintiffs for judgment on the pleadings [DN 18] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 4, 2013

cc: counsel of record

11